And we're going to continue now with appeal numbers 22-1084 and 1085, Ronald and Gail Goldberg v. the Commissioner of IRS. And Mr. Parker, I'm first going to recognize Mr. Stein. Honored panel, may it please the court. My name is Alon Stein. I represent the plaintiff appellant, Gail Goldberg. This case is being appealed from the tax court's granting of the Both motions for summary judgment revolve around one core issue of whether the Goldbergs received proper jurisdictional mandatory notice at the beginning, and I'll refer to that as the NBAP, and at the end, FPAA of a partnership-level audit as required by 26 U.S.C. 6223E and the effect of not receiving such notices, and whether the IRS has met its burden of proof to show that it mailed the NBAP and the FPAA as required by statute when it presented an incomplete certified mailing list to the tax court in the motion for summary judgment proceedings. The appellants are seeking to correct three wrong assumptions, three wrong assumptions. The first wrong assumption is that the Goldbergs didn't argue at the CDP hearing, at the collection due process hearing, that the IRS had not mailed the FPAA notice. That is wrong, because the IRS notice of determination found in Appendix 55 specifically states that Goldbergs contested the underlying liability, arguing that both the NBAP and the FPAA were not mailed. At a CDP hearing, a taxpayer can challenge the underlying tax liability if the taxpayer did not receive the requisite statutory notice. Was the substance of that challenge any more than the taxpayer saying, we don't recall receiving it? No. That was in response to a motion for summary judgment. The CDP, they specifically said that they didn't receive it. But even so, the burden of proof is on the IRS to affirmatively show that they mailed it by producing evidence. Definitive evidence would be a completed certified mailing list. There's no such document like that in the record. I mean, I refer to Corte A-177-190, which is an example of an FPAA certified mailing list in the record, where it's incomplete. The total number of pieces listed by the sender, 101. Total number of pieces received at the post office, who knows? I mean, that's a big deal. And there's no signature by the postal service, which under White v. The Commissioner, which we cited in our brief, is not proper evidence of mailing. The second wrong assumption... So before you get too much further down this path, I understood the primary point that the Commissioner is making and that the tax court accepted to be that even if there were flaws, you didn't make a timely objection to them. And so it's really just too late for this inquiry now? Right. And we respond to that in our reply brief. 6223E was what he was arguing, what the IRS was arguing. They're saying that we should have elected. But 6223 specifically deals with it's only applicable if the FPAA and the NBAP are not timely mailed, not if they're never mailed. And that's pretty clear in both the regulation, 26 CFR 301.6223E2, and in the plain words of the statute. So would you mind actually, as you continue this argument, not referring to these by their letters? I mean, some of us don't spend all the day... I'm sorry. Yeah, I'll refer to it as the regulation and the statute. So 6223 is the statute. 6223E1 specifically states that that subsection applies if the Commissioner fails to mail the notices from 6223E, which is the provision dealing with those that says you must mail these notices within the period specified in subsection D, and it lists the time period. And then the regulation says it applies in any case if the IRS fails to timely mail any notice described in 6223A. It doesn't say ever mail. It says timely mail. 6223E and the election only apply once the IRS proves that it mailed the FPAA, and that's evident from the plain language of the statute and the regulation. And we argue this in our reply brief. And if you look at that, if you look at 6223E, it gives two scenarios. One, if the FPAA was mailed while the TEPFRA proceeding is ongoing, but not timely, or if the FPAA is mailed and the TEPFRA proceeding is not finalized yet. So before or after. It doesn't say ever. It's their burden of proof to show that they mailed it, and we're saying it wasn't done. Now section D of the regulation in interpreting 6223E discusses how to make an election. It states the election shall be made by filing a statement with the IRS office mailing the FPAA. Conditioned precedent to the election is mailing. How do you mail it to the office mailing the FPAA if they never mailed it? So is this an argument? I just want to make sure I have this contextualized. Is your opinions that appear to be findings that the final partnership adjustment notice was sent, what you call the FPAA? And we're saying that there would be. Is that an erroneous factual finding? Is that what you're arguing? It's an erroneous legal finding, and the motion for summary judgment. Well it's not a legal question whether it was mailed or not. You know, whether notice was provided. Okay, your honor, you're right. Factual finding. And we're saying either one of two things. Either one, the IRS's motion for summary judgment should have been denied because there were issues of fact and they did not meet their burden. The certified mailing list, specifically, you know, there's some issues of fact right there. Now one of the points that got brought up in the response brief by the IRS addressing that point is there was a letter that was written by Mr. Goldberg and he had actual notice apparently. However, that's not the standard. Whether or not Goldberg had actual notice, according to a case cited by the IRS, Bedrosian v. The Commissioner, 143 Tax Court, 83 page 98. Actual notice is not the standard. The standard is whether the IRS has met the requirement for sending proper notice. The notice from 6223 is a jurisdictional notice as stated in Torres FX v. The Commissioner, another case cited by the IRS. And Genesis Oil v. The Commissioner, a case cited by the IRS, says the commissioner may not assess a delinquency in tax until a valid FPAA is mailed. Before you get into your rebuttal time, you indicated there were three assumptions. You The second assumption is the wrong assumption that Goldbergs are not disputing whether the IRS mailed the FPAA. We are majorly disputing it. The IRS claims that it mailed two FPAAs, one on November 27, 2007, the other on December 3, 2007, but it's not met its burden of proof. They have to produce an evidence, a complete certified mailing list or a 3877 document, which is the formal document that the post office uses, that's fully filled out and that definitively shows that mailing, and it's not, you don't have a presumption of mailing unless it's completely filled out. And that's a case to be cited, White v. The Commissioner. And the third? The third one was the wrong assumption that the election remedy is applicable. And we're saying it's not applicable because they haven't proven mailing. It all comes down to whether or not they proved mailing. And it only comes into effect, the election remedy, there's a condition present of mailing from the plain language of the statute and the regulation. Would you like to reserve the rest of your time for rebuttal? Thank you. Thank you, Mr. Stein. You should feel free to leave up your information. Since he's on the phone, can I stay up here? Actually, Mr. Goldberg is going to go next. Oh, that's right. I forgot. Thank you. Thank you. Mr. Goldberg, we've granted you two minutes here on the appellant argument. You're going to have a brief rebuttal time as well. Yes, sir. What would you like to say to us? It's going to be very brief. Mr. Stein's a hard act to follow. He's stated most of it. Percy, thank you. This case is about laws and rules. Laws being, of course, the statutes and the rules and the specific jurisdictional notice of the IRS and their burden of proof. Whether it was in the record or not that it's there, that it said, I don't recall, it really doesn't matter. The issue is the burden of proof, the proper CML, or certified mailing list that the service uses, and it simply doesn't exist in the record. Mr. Goldberg, how many of these tax partnerships were there? It's fewer than 100. Do you know how many there were? We don't know. How much money is at issue in the case? It's substantial, probably in the seven-digit number at this point. Thank you. You're welcome. The standard, of course, is whether they met their burden of proof. One of the things we asked for, we were denied discovery. We couldn't find anything out about this CML list that they approved, with the exception of they used this form that they have, this CML. It is a substitute for what they call a postal form 3877, and what's also interesting is I found in there's a file, or there's a book called the DMM, which is the Domestic Mailing Manual, which is the specific instructions that everybody has to file for certified mailings or any kind of mailing. Our issue is very simple. We asked in the discovery if they ever got permission from the post office to use their form CML against form 3877, and that is still a question that is out there and hasn't been done, because if they've been doing it for years, it's just not valid. Besides that, the form at the bottom is very, very clear. The computer puts in the amount of letters that are there. It's supposed to be brought down to the post office. The post office then has to verify it. They have to count them. They have to compare them. They have to affix the postal stamp, also known as the BOPR. They have to physically write in the count, and they have to sign it, and every document we've seen is devoid of the piece count and the signature, and in some cases, not even a postal stamp. Mr. Goldberg. I expect that Mr. Parker, on behalf of the service, in a few minutes is going to draw our attention to, among other things, the letter that you wrote on October the 5th, 2010, and I expect that they'll argue, as they do in the brief, that your sending that letter was of legal significance for purposes of notice. Is there anything you'd like to tell us about that? That was information that I received from another investor. It had nothing to do with anything that I had in any notice that I ever received. I never received their notice. This is strictly information from another thing, and that was challenging the qualification of the tax matters partner to actually be the tax matters partner. I'll reserve my time. Would you like to reserve the rest of your time? Yes, please. Very good. Thank you. Mr. Parker, we're now going to move to you. You're on audio. Mr. Parker. Yes, thank you. Please record. My name is Richard Parker, and I represent the Commissioner of Internal Revenue in this appeal. The government's position, the commissioner's position is the tax court correctly concluded that the IRS Office of Appeals did not abuse its discretion in determining the Goldbergs were barred from challenging their underlying tax liabilities in the CBP hearing, and the proposed liability and levy actions should be sustained. Their position in the CDB hearing and the tax court centered upon their assertion that they did not receive the NBAPS, which was the notice at the beginning of administrative procedures with respect to the Alpha and Meta-Dwarf Tefla proceedings, and the IRS could not prove it properly, mail them to the NBAPS, and that they could therefore raise the challenges to their underlying tax liabilities. But their position is legally incorrect. The statute provides, which is 6223, that the commissioner does have to provide both two notices, which are the beginning notice, the notice of beginning of administrative procedures with the NBAPS, and the FPAW, and we all concede that Mr. Goldberg was entitled to receive both. However, contrary to the position that they take, 6223E is a sole remedy that provides exclusive remedy when the IRS does not comply with the NBAPS requirement or the FPAW. If I may read it, it says, this subsection applies where the secretary has failed to mail any notice specified in subsection A to a partner entitled to such notice within the period specified in subsection D. So the commissioner's position is that E does apply even with the extent if an NBAPS wasn't remedies would be under E2 or E3. Of course, this doesn't apply in this case because the commissioner did send NBAPS to Mr. Goldberg, and he sent FPAWs to both Mr. and Mrs. Goldberg. It's in evidence, it's document 22, exhibit P and exhibit Q, showing the FPAW certified mailing list. And he didn't, to the extent that they had a chance to challenge the underlying liabilities in the TEFRA proceedings, which included their statute of limitations argument, they would be barred from pursuing that in the CDP proceedings under section 6330C2B, having had a prior opportunity to raise these challenges. The appeals officer used the computer, looked through the files, looked through all the mailings that Goldberg's provided to her, talked to the IRS counsel, and properly determined that they had a chance to participate in the proceedings. They did not participate in the TEFRA proceedings, they did not settle with respect to the items, and they did not elect to have the partnership items treated as non-partnership items. So, Mr. Parker, excuse me, I'm going to interrupt you because I can't see you, Judge Wood. I would like just a clean response from you to what I understand to be the Goldberg's primary argument, which is that in the absence of clear proof of mailing both of these things, if I'm getting it right, the FPAA and BAP, because the burden is on the IRS to show the mailings, no evidence means the IRS loses and the mailings didn't happen. And if the mailings didn't happen, then we can go all the way forward to the CDP and the Goldberg's are entitled to raise their points. So, they seem to be arguing, as far as I understand it, that there's just this flaw at the outset that the commissioner has not presented any evidence to overcome. In the context of the CDP hearing, the settlement officer would have looked to see if they had a chance to challenge the underlying liability. And that was Officer Miller, right, in this instance? That's correct. Yes. And she looked through the computer records, she talked to the IRS chief counsel representative in the TEFRA proceedings, and determined that the notices had been sent, that the Goldberg's would be barred from raising their underlying liability in the CDP proceeding, and then went forward from that. Do we know if Miller reviewed whether the beginning notices, those first notices in the TEFRA proceedings had been sent? How much do we know about the thoroughness of this review? According to her records, which are exhibit Y to her declaration, which is document 22, she reviewed all the materials that the Goldberg's proceeded, she went through the computer records, she talked to the commissioner's counsel in the TEFRA litigation, and reviewed all those materials, including the litigation, and whether they would be barred. She did a very thorough review. To the extent of the FPAWS being raised an issue, her notes and their materials submitted to her were all centered upon the NBAPS, as was their discovery. And in the tax court, all their arguments were represented with respect to the NBAPS. They did not talk about the FPAWS at all. In their petitions, they solely represent the fact that the NBAPS had not been mailed. Well, actually, and had not been received. And their status report... And in English, that means the note... I'm looking at your glossary. That means they didn't receive the notice of beginning of administrative proceeding? Correct. Their whole argument has been that they did not receive the initial notice. In their petition, they assert that they didn't receive it, and therefore, wasn't properly proved to be mailed. In their status report, which was document 14, they said for the issue of the tax court was whether they received the NBAPS for either 1998 and 2000, and whether they firmly believe that the commissioner cannot prove a certified mailing of the NBAPS for both tax years. No issues were listed with respect to the FPAWS. In their summary judgment filings under FACTS, they solely argued with respect to NBAPS, and requested summary judgment solely on the basis of their assertion that the IRS failed to mail the NBAPS. In their response to the commissioner, they said that they do not disagree that the commissioner may have issued the FPAWS as stated in the commissioner's motion for summary judgment, but that they had no memory of the documents in the files of receiving them. And then they requested that the tax court deny commissioner's motion for subject... on the sole basis that the IRS allegedly failed to mail the NBAPS. Mr. Parker, it's Judge Scudder. Let me pause you and go back to Judge Wood's question for a moment about the FPAAs. What is the affirmative... what is the evidence in the record? Forget what was argued when considerations of forfeiture waiver. Set that aside. What is the affirmative evidence in the record that supports the tax court finding that the FPAAs were issued on time? That would be in document 22, which is the Declaration of Settlement, Officer Jane Miller, Exhibit P, and Exhibit Q. Exhibit P would be record 570 and 573, which lists their specific names and address. And then Exhibit Q, with respect to Alpha, would be record 576 and then page 580. Okay, and what is it that we're... that you're describing with the exhibit letters? Those are the... I'm sorry. Go ahead. Those are the FPAA certified mailing lists, a dated November 27, 2007, from Matador Orch, which is their 1998 taxable year. And Exhibit Q is the FPAA certified mailing listing, a dated December 3, for Alpha, for the 2000 taxable year. And both of those list the Goldbergs with the names and addresses. And that's the evidence that the appeals officer, in part, looked at, as well as the computer files and talking to IRS chief counsel on the tougher cases. And, of course, this, to a degree, comes en moute because they did not challenge the FPAAs in the CDB case. And even to the extent they didn't raise it in the CDB case, they didn't raise it in the tax court. And there would be no burden on the commissioner to be presenting evidence of the mailing beyond what is presented when they had not raised it as an issue. Okay, this is... I'm sorry. No, no, no. It's... No need to apologize. I got a second question for you, and it's this. I took away from your brief that forget the NBAP and the FPAA. Just altogether ignore them, if you want to. There's another reason why the tax court decision should be affirmed, in your view, that is independent of the dialogue we've been having. And that reason is because of the legal consequence in the commissioner's judgment of what attached to Mr. Goldberg's letter from October of 2010, if I'm not mistaken. I thought that what you were arguing is that his sending of that letter and making an inquiry or lodging an objection, I thought on statute of under Section 6320 that deals with the collection due process proceedings. Am I right so far or wrong? Your Honor, that would go to the point of whether they could challenge the underlying liability and raise the arguments in the CDB hearing, which would be the 6330. No, I'm sorry. 6320... Hold on. Which one governs collection due process? 6320, right? 6330 is the levy and 6320 is the lien. And then they cross-reference each other. Okay. But with respect to the actual knowledge... Let me ask the question in a different way. What is the legal significance, if any, in the commissioner's view of the letter Mr. Goldberg sent? I'll just supplement that by saying I was wondering, relatedly, I thought the commissioner was saying that the service told him at the time that if he had issues with the assessment of taxes on these partnerships, he could attempt to raise those in the TEFRA proceedings that were going on. And his failure to do so was just a failure to do so, but it meant that it wasn't available to him to reopen at the CDP hearing. Your Honor, we would not argue that the fact that he had actual knowledge goes to the notice requirements. What our argument would be is that... And I'm not addressing your question. No. What I'm trying to figure out is you make arguments in your red brief about the legal significance of the letter. Okay. There, in fact, is a letter that Mr. Goldberg sent, and the commissioner believes that the letter has legal consequence in the case. What is the consequence and what's the source of the consequence? Why are we even talking about the letter if the commissioner could care less about it? It's not that the commissioner doesn't care less. It's the fact that it shows that there was an opportunity to participate in the proceedings. Of course, the commissioner, again, asserts that it mailed him the NBAPS and the APPAWS. Why do you keep going back to the NBAP and the FDAP? That's not what we're talking about. The question we're talking about is the letter, and I thought the argument you made in your brief... You can tell me I'm wrong. I'm willing to believe that. I thought the argument you were making was that the letter has consequence under Section 6330C2B. I thought that's what you were arguing, but I might be wrong. No, Your Honor. I mean, I would say yes, Your Honor. It's not what we intended when we filed the brief. What we were pointing out is that with respect to the notice provisions and the APPAWS that was sent and that was not disputed by the Goldbergs that it was sent in their tax court proceedings, they could not challenge their underlying liability in the CDP proceedings because they had already had the chance to challenge those liabilities by receiving the APPAWS before the tax court proceedings were concluded. I'm sorry to interrupt you, but your answer seems to be that I am focused on entirely the wrong thing, which is fine. I'm focused on the letter. The reason that I'm focused on the letter is because I read your brief to focus on the letter, and now you're telling me forget the letter. The letter has nothing to do with it. The whole appeal turns upon whether Mr. Goldberg, by extension his wife, received the NBAP and the FPAA. That's what the appeal turns on. Is that the commissioner's argument? No, Your Honor. It does not matter. Did you look at page 37 of your brief? Because I think that's where Judge Scudder is getting this. I have it. That's exactly the page I've opened. Yes, right. Yep. Because you're putting some weight on this letter. You tell us it was October 5. The commissioner's counsel replies that Ronald Goldberg should formally participate in the tax court proceedings, and he doesn't, and that has implications later on for the collection due process here. And you cite the provision that I just recited. Right. On page 38, just picking up on where Judge Wood was reading, you point us to 6330 C2 capital B, and I presume you do that because you must think it means something. Yes, Your Honor. He had a prior opportunity to dispute the liability, and in the context of the sending of the FPAA and the ongoing tax proceedings, Mr. Goldberg had acknowledged that the proceedings were ongoing. He chose not to participate. And more an opportunity to participate, I thought you were saying. It wasn't just the actual knowledge, which you've just now said isn't enough by itself, but that the commissioner actually pointed him in the direction of this as an opportunity to raise the concerns that he had. That's correct, Judge Wood, and he had the option again of either not participating in the procedures and being bound by them or entering into a settlement or choosing to have the partnership items removed and treated as non-partnership items. And neither he, neither Mr. Goldberg or Mrs. Goldberg did either of those things. Therefore, they were bound by the final decisions and by the tax court court and the TEPA proceedings. And therefore, to go to the point under 6330C2B, which is the provision Judge Scudder was putting forward, they would be precluded from challenging the underlying liabilities in a CDP proceeding because they had a prior opportunity to do so. And is that conclusion conditioned upon our finding or our affirming the finding that they received either the NBAP or the FPAA? The NBAP would be irrelevant. It would be the FPAA. And again, they've waived that issue. Can you focus on the question I asked? I'm sorry, Judge Scudder. The question I asked is, is your conclusion dependent upon our affirming the finding that they received the FPAA? All I'm trying to get at, I'm not trying to give you a hard time, I'm trying to get at, is the October letter, October 2010 letter of independent legal significance or is it dependent upon our affirming a finding about the FPAA? Our position would be dependent on finding the FPAA. Receipt doesn't matter. It's actually the mailing itself. Thank you, Mr. Parker. We're now going to move back to Mr. Stein. Mr. Stein, we're in rebuttal argument, two and a half minutes. Thank you, Your Honors. I want to address a couple points. First of all, the notice of determination issued after the collection due process proceeding on A55 of the appendix, there's a section called issues you raised, which is the issues the Goldbergs raised. Challenges to liability. You disagree with your liabilities indicating there was a statute of limitation issues because the notification of the audit, that's the first notice, and the audit result, that's the FPAA, were not properly issued. It's right there. IRS wrote this, not the Goldbergs. In terms of exhibits P and Q, these are documents that are in the tax court proceedings. I will mention that exhibit P is the FPAA certified mailing listing, not the NBAP certified mailing listing. So this was something in the tax courts previously. At a CDP hearing, it says that Kanofsky versus the commissioner case cited by the IRS says at a CDP hearing, at a collection due process hearing, a taxpayer can challenge the existence or amount of the underlying tax liability for any tax period if such a taxpayer did not receive any statutory notice for such tax liability or did not otherwise have the opportunity to dispute such tax liability, citing 26 U.S.C. 6230C. Our position is that the Goldbergs could raise this notice issue because the IRS has not met its burden of proof of proving that they mailed the FPAA or the NBAP as we argued below. So therefore, it was fair game. Mr. Stein, can I pause you on that? Is it your position that the October letter is a complete nothing? It has no significance of any kind? Zero. And the reason why I brought it up initially is because I was responding to the IRS. So 6223E, the IRS says it is the sole remedy when the two notices aren't sent. As I argued earlier, it's not the sole remedy. It's only the sole remedy if the IRS actually sent the notices. They didn't send the notices, it doesn't apply. There's a conditioned precedent of mailing, which is what we argued. Why don't you finish up then, Mr. Stein? One last point, and then I'm going to ask for a relief. In the motion for summary judgment response, A92, Goldberg says, petitioner does not disagree that the respondent may have issued FPAAs as stated in response 1415, but petitioner has no memory or documents in petitioner's files of receiving them. That is not the same thing as saying we don't contest the FPAA was mailed. It is the burden of the IRS to definitively prove that they mailed the FPAA and the NBAP. They have to produce a document, a document that is completed, a certified mailing list that is completed. So your honors, relief requested. The IRS not be, it is our contention that the IRS has not met its burden of showing the mailing or date of mailing, and the granting of the IRS's motion for summary judgment should be reversed. Furthermore, that's the very least. Furthermore, we believe that the based on what's on the record, the FPAA is a jurisdictional notice, as we had argued earlier in the Taurus FX case and the Genesis Oil case, and assessments cannot take effect until the FPAA is properly sent as stated in the, again, the Genesis Oil case and the Taurus FX case. Accordingly, we believe, and we ask this court to reverse the findings of the tax court. In addition, Goldberg's motion for summary judgment should have been granted. So reversing the IRS's motion for summary judgment should be reversed, and then the Goldberg's motion for summary judgment should have been granted. We're asking this court to reverse all the findings of the tax court. Thank you. Thank you, Mr. Stein. Mr. Goldberg, we'll give you a minute or so here for a final rebuttal. Any final thoughts you have in rebuttal? Thank you, Judge. Judge, I'm going to make it real whether or not I had any actual notice is absolutely not relevant. The commissioner's own case in Bedrosian, there's a couple lines. Actual notice is not the standard. The standard is whether the IRS met the requirements of the sending proper notice. The issue is whether the IRS sent a notice. It is their burden to show that they mailed the notices and that they did it properly. Everything that we have shows that it isn't properly done, according to the domestic law. Also, in that same case, there's a provision that says that they have clerks that prepare these documents, and they call them 90-day clerks, and that they have the ability to go back over the documents from the post office, like the CDML, and if it's defective, take it back and fix it. Guess what? They didn't. There's no notice, and we request exactly what Mr. Stein says, that this case be overturned, and the statute of limitations is expired. That's all I have, sir. Thank you, Mr. Goldberg. Thank you, Mr. Stein. Thank you, Mr. Parker. The case will be taken under advisement. Thank you, Judge.